WALLACE, Judge.
Frenecia Latrice Thomas filed a petition for writ of habeas corpus challenging the trial court’s order finding her incompetent to proceed in two criminal cases and directing that she be involuntarily committed to the Department of Children and Family Services (DCF). By order, we treated the petition as a petition for writ of certiorari.[1] Because the trial court’s ruling that Ms. Thomas met the requirements for involuntary commitment under section 916.18(1), Florida Statutes (2011), is not supported by clear and convincing evidence, the challenged order departs from the essential requirements of the law. See, e.g., Dep’t of Children & Families v. Alvarado, 946 So.2d 180, 131 (Fla. 5th DCA 2007). Accordingly, we quash that portion of the order committing Ms. Thomas to DCF, and we remand for further proceedings.
I. THE FACTUAL AND PROCEDURAL BACKGROUND
The State charged Ms. Thomas in two cases with aggravated battery, grand theft *405 motor vehicle, and criminal mischief. Because of questions concerning whether Ms. Thomas was incompetent to proceed within the meaning of section 916.12(1), the trial court, under section 916.115(1), appointed two mental health experts to examine her. The two experts, Bala K. Rao, M.D., and Charles 0. Matthews, Ph.D., examined Ms. Thomas and filed written reports with the trial court. At the competency hearing, the parties and the trial court relied solely on the experts’ written reports; the trial court did not hear any live testimony. Both experts opined that Ms. Thomas was incompetent to proceed within the meaning of section 916.12(1). Ms. Thomas does not challenge that portion of the trial court’s order finding her incompetent to proceed, and her competency is not at issue in this proceeding. Instead, we address that portion of the trial court’s order involuntarily committing her to DCF for treatment.
II. THE PERTINENT STATUTE
Section 916.13 addresses .the question of the involuntary commitment to DCF of defendants charged with a felony who have been adjudicated incompetent to proceed. The statute provides, in pertinent part:
(1) Every defendant who is charged with a felony and who is adjudicated incompetent to proceed may be involuntarily committed for treatment upon a finding by the court of clear and convincing evidence that:
(a) The defendant has a mental illness and because of the mental illness:
1. The defendant is manifestly incapable of surviving alone or with the help of willing and responsible family or friends, including available alternative services, and, without treatment, the defendant is likely to suffer from neglect or refuse to care for herself or himself and such neglect or refusal poses a real and present threat of substantial harm to the defendant’s well-being; or
2. There is a substantial likelihood that in the near future the defendant will inflict serious bodily harm on herself or himself or another person, as evidenced by recent behavior causing, attempting, or threatening such harm;
(b) All available, less restrictive treatment alternatives, including treatment in community residential facilities or community inpatient or outpatient settings, which would offer an opportunity for improvement of the defendant’s condition have been judged to be inappropriate; and
(e) There is a substantial probability that the mental illness causing the defendant’s incompetence will respond to treatment and the defendant will regain competency to proceed in the reasonably foreseeable future.
(2) A defendant who has been charged with a felony and who has been adjudicated incompetent to proceed due to mental illness, and who meets the criteria for involuntary commitment to the department under the provisions of this chapter, may be committed to the department, and the department shall retain and treat the defendant.
Here, our task is to determine whether competent, substantial evidence supports the trial court’s ruling that Ms. Thomas met the statutory criteria for involuntary commitment. Thus we turn to an examination of the experts’ written reports — the only evidence before the trial court at the hearing.
III. THE EXPERTS’ REPORTS
In his written report, Dr. Rao said that Ms. Thomas suffers from a bipolar disorder. Dr. Rao did not explicitly address whether Ms. Thomas met the criteria for involuntary commitment under subsections *406 916.13(1)(a)(1) and (2). However, Dr. Rao did opine that Ms. Thomas did not meet the criteria for commitment under the Baker Act.[2] Section 394.467, Florida Statutes (2011), of the Baker Act states the criteria for involuntary inpatient placement based on mental illness. Subsections 394.467(1)(a)(2)(a) and (b) require the trial court to make the same findings as sections 916.13(1)(a)(1) and (2), and the language of the two statutes is substantially similar. Although Dr. Rao determined that Ms. Thomas was mentally ill, he also determined that she did not meet the criteria for involuntary inpatient placement under the Baker Act. It follows that Dr. Rao implicitly found that Ms. Thomas did not meet the criteria set forth in subsections 916.13(1)(a)(1) and (2) for involuntary commitment to DCF.
In addition, Dr. Rao did not specifically address the question of whether all less restrictive treatment alternatives would be inappropriate — a requirement for involuntary commitment under subsection 916.13(l)(b). However, Dr. Rao did recommend that Ms. Thomas have competency training while she was in the county jail. This recommendation suggests that less restrictive treatment alternatives than involuntary commitment to DCF were available.[3] Finally, Dr. Rao did not address the question of whether there was a substantial probability that Ms. Thomas’ mental illness would respond to treatment with the result that she would regain competency to proceed in the reasonably foreseeable future — a requirement for involuntary commitment under subsection 916.13(1)(c).
There are similar issues with Dr. Matthews’ report. Dr. Matthews said that Ms. Thomas suffers from a psychotic disorder. With regard to the criteria in subsections 916.13(1)(a)(1) and (2), Dr. Matthews reported that Ms. Thomas “did not appear to be a danger to herself or others at the time of the current evaluation.” However, he cautioned that Ms. Thomas might “over-react with violence ... in situations where she feels threatened and if she has been abusing substances.” Concerning the propriety of less restrictive treatment alternatives than involuntary commitment to DCF, Dr. Matthews opined that Ms. Thomas should be evaluated to determine whether she needs a dual diagnosis treatment program for both substance abuse and mental health issues. If such an evaluation could not be performed in a less restrictive setting, Dr. Matthews recommended that it be performed at a forensic state hospital program. Concerning the requirement for involuntary commitment involving the probability of regaining competency under subsection 916.13(l)(c), Dr. Matthews stated that “[i]t is not clear if [Ms. Thomas] would be able to regain competence in the foreseeable future given her cognitive limitations and severe mental illness.”
IY. THE TRIAL COURT’S ORDER
In its order adjudging Ms. Thomas to be incompetent and involuntarily committing her to DCF, the trial court found under subsection 916.13(1)(a)(1) that Ms. Thomas *407 was manifestly incapable of surviving alone or with the help of willing or responsible family or friends. The trial court also found that without treatment Ms. Thomas is likely to suffer from neglect or a refusal to care for herself, thereby posing a threat of potential harm to her well-being. The experts’ reports do not support these findings. Dr. Rao determined — at least implicitly — -that this was not the case. Similarly, Dr. Matthews found that Ms. Thomas was not a danger to herself at the time of the evaluation. Under subsection 916.13(1)(a)(2), the trial court found that there was a substantial likelihood that in the near future Ms. Thomas will inflict serious bodily harm on herself or on another person. Once again, Dr. Rao implicitly determined that this was not the case, and Dr. Matthews found that Ms. Thomas was not a danger to herself or others.
Furthermore, the trial court found that both experts recommended that less restrictive treatment settings were inappropriate. This finding was clearly unsupported by Dr. Rao’s recommendation. Dr. Matthews determined that treatment in the forensic state hospital made the most sense unless there were less restrictive alternatives available. Unfortunately, Dr. Matthews did not address the availability of any less restrictive alternatives; nor did he determine that any such alternatives would be inappropriate in this instance. Although the trial court found that there is a substantial probability that the mental illness causing Ms. Thomas’ incompetence will respond to treatment and that she will regain competency to proceed in the reasonably foreseeable future, neither of the experts’ reports supported this finding.
V. CONCLUSION
The trial court’s ruling that Ms. Thomas met the requirements for involuntary commitment to DCF is not supported by clear and convincing evidence. Accordingly, we quash that portion of the trial court’s order. The experts’ reports did not explicitly address all of the requirements for involuntary commitment under section 916.13(1). Accordingly, on remand, the trial court shall hear further evidence on this issue from Dr. Rao and Dr. Matthews or other qualified experts. If the evidence presented does not clearly and convincingly establish that Ms. Thomas meets the requirements for involuntary commitment under section 916.13(1), the trial court shall hold a hearing to determine the appropriate mental health treatment for her in accordance with Florida Rule of Criminal Procedure 3.212(c)(1), (2), and (d). See Gatlin v. State, 79 So.3d 202, 204 (Fla. 2d DCA 2012).
Petition granted; order quashed in part.
KELLY and KHOUZAM, JJ., Concur.

. See Oren v. Judd, 940 So.2d 1271, 1272 n. 1 (Fla. 2d DCA 2006).

. The Florida Mental Health Act is also known as the Baker Act, and it appears in part I of chapter 394, from sections 394.451 to 394.4789. See § 394.451, Fla. Stat. (2011).

. At the competency hearing, both the trial court and the parties acknowledged that competency training was not available at the county jail. Later, Dr. Rao sent an e-mail to trial counsel recommending that Ms. Thomas be treated at the residential program at the Northside Mental Health Center; however, this recommendation was not part of Dr. Rao’s written report and was not considered at the competency hearing.